## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

EPOCH COMPANY, LTD.,

        Plaintiff,

v.

THEA VON ENGELBRECHTEN,

        Defendant.

Civil Action No. _25-2871_____

### COMPLAINT AND JURY DEMAND

Plaintiff Epoch Company, Ltd., ("Epoch" or "Plaintiff") brings this civil action for copyright infringement, trademark infringement, and unfair competition under federal, state, and/or common law against Defendant Thea Von Engelbrechten ("Von Engelbrechten" or "Defendant") by their undersigned attorneys, and allege as follows, upon actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters.

### NATURE OF THE ACTION

1.      Epoch originated a toy line, called Sylvanian Families, in Japan in 1985. In 1993, Epoch launched the same toy line in the United States under the Calico Critters mark. The Calico Critters toys are unique and adorable animal families and friends, doll houses, and accessories. Epoch created the concept of the idyllic Calico Critters' world, where the andromorphic animal figures have their own names, birthdays, and personalities. They live in stylish houses, surrounded by luscious greenery, woodland, a meadow and a river. For decades, children and Calico Critters fans have been using their imaginations to play with these animal figures.



**From Epoch's Website for Calico Critters. Exhibit 1.**

2.    Calico Critters have global and multigenerational fan bases in the US, Japan, Europe and other countries. Because the Calico Critters toys promote children's healthy cognitive development, critical thinking, and fine motor skills through pretend play, schools and daycares around the country use the Calico Critters toys as part of their early-childhood educational tools. And parents who played with Calico Critters as children then introduce them to their children. Epoch promotes the Calico Critters toys via online videos on YouTube to appeal to all generations.



**Epoch's YouTube channel for Calico Critters. Exhibit 2.**

3.     Under the username Sylvaniandrama, Defendant Thea Von Engelbrechten has been creating, publishing, and disseminating online advertising videos, which prominently feature the Calico Critters dolls, furniture and accessories, on various social media, including TikTok, Instagram, and YouTube, without Epoch's permission.

3



**Defendant's TikTok Account Page. Exhibit 3.**

4. Defendant creates these infringing works for the purposes of advertising products and services for others. Defendant advertises other brands' goods and services, including from Kate Spade, Marc Jacobs, Burberry, Netflix, Hilton, Taco Bell, Urban Outfitters, Supergoop, Asos, Sephora, Oatly, and many others, all using the Calico Critters toys.

5.     Defendant also offers, sells, markets, promotes her advertising and content creation services and apparel products via her social media accounts, using the Calico Critters toys.

6.     In an online interview to the publication *Marketing Brew*, Defendant, commenting on creating these infringing advertising videos, said "[i]t's definitely a dream come true for me because this was always what I wanted to do…I always wanted to work in advertising," Exhibit 4. Defendant consciously focuses on the Calico Critters toys in the infringing videos because, according to Defendant, "the less that you mention the brand, the better because people are going to gravitate more towards that and actually be invested in the video." *Id.* Defendant has built her advertising business without obtaining Epoch's permission to use the Calico Critters toys for commercial purposes.

7.     Because TikTok and other social media have widely been accepted as platforms for commercial advertising, online viewers watch Defendant's infringing videos as ads for other brands' goods and services, just like traditional TV commercials.

8.     Below are screenshots from Defendant's infringing videos promoting Sephora's sales campaign, and the viewers' comments on the advertisement:









**Exhibit 5**.

9.    Defendant uses the Calico Critters dolls to promote sales of luggage products offered by Away.









**Exhibit 6**.

10.     Defendant created an infringing video to promote sales of Marc Jacobs' goods.

 





Nell Harris - Easily Inspired
Did… did I just get convinced by Sylvanian Drama that I need a Marc Jacob's bag?
2024-5-13    ♡ 339    Reply

**Exhibit 7**.

11.      Because of the global, multigenerational and timeless appeal of the Calico Critter toys, Defendant now has more than 2.5 million followers with 69 million likes on TikTok, and 1 million followers on Instagram.

12.      Defendant is building her commercial success as an advertising and content creation service provider. She is able to do so because the large number of her followers directly impacts the visibility and reach of the infringing advertising videos to consumers. For instance,

the more followers she has on her TikTok page, the more viewers watch her advertising videos, and the more monetizing opportunities she has from other brands to promote their goods and services.

13.     Defendant is "working to build Sylvanian Drama's own brand image" as an advertising and content creation service provider at the expense of Epoch's goodwill it has built over decades. Exhibit 8.

14.     To further illustrate Defendant's disregard for Epoch's intellectual property rights, Defendant even uses Epoch's copyrighted image as her profile picture on her social media accounts.

| Epoch's Copyrighted Image - Exhibit 9. | Defendant's TikTok Profile Image |
|---|---|
|  | |

15.     In or about October 23, 2023, Epoch served a DMCA notice on TikTok, requesting to remove Defendant's infringing videos. After TikTok removed the infringing videos, Epoch has been seeking to amicably resolve this infringement issue with Defendant. Even with the notice of infringement, Defendant has been doubling her efforts to exploit Epoch's copyrights and trademarks for her own commercial gain. As further detailed below, Defendant continues to usurp licensing opportunities from Epoch and use Epoch's intellectual property for her own gain.

16.     Epoch therefore had no choice but to file this lawsuit. Unless enjoined, Defendant will continue to cause irreparable injury to Epoch's goodwill and reputation, for which Epoch has no adequate remedy at law.

## THE PARTIES

17.     Plaintiff Epoch Company, Ltd. is a corporation incorporated under the laws of Japan.

18.     Upon information and belief, Defendant Thea Von Engelbrechten is an individual who resides in Ireland, and conducts business throughout the United States, including within New York and in this Judicial District.

19.     Upon information and belief, Defendant is the creator and editor of the online advertising videos posted under the username Sylvaniandrama on various online social media platforms, including TikTok, Instagram, YouTube, and Facebook (the "Infringing Works").

20.     Upon information and belief, Defendant markets, intends to sell, reproduces, and distributes the Infringing Works throughout the United States, on the Internet, and in the State of New York.

## JURISDICTION AND VENUE

21.     This action arises under the Copyright Act of 1976 (17 U.S.C. § 101, et seq.) and the Federal Trademark Act of 1946, known as the Lanham Act (15 U.S.C. §§ 1114 & 1125(a)).

22.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court also has subject matter jurisdiction over Plaintiff's related claims under state law pursuant to 28 U.S.C. § 1367(a).

23.     This Court has personal jurisdiction over Defendant because Defendant has engaged in substantial and regular business in the State of New York and this District, including

by distributing, disseminating and publishing the Infringing Works, and offering for sale and selling its advertising services to consumers and/or entities located within the State of New York.

24.    Additionally, this Court has personal jurisdiction over Defendant because Defendant has or had entered into commercial contracts with entities located in New York, including Tapestry, Inc., Kate Spade, LLC, Marc Jacobs International, LLC, and JRSK, Inc. to create the Infringing Works.

25.    Defendant has therefore transacted business and/or caused tortious injury in this District, which actions give rise to Epoch's claims. Accordingly, the Court may exercise personal jurisdiction over Defendant under at least CPLR 302(a)(1).

26.    As further detailed below, Defendant maintains purposeful minimum contacts with the State of New York and this District related to Epoch's claims such that the exercise of personal jurisdiction over Defendant in this action comports with the requirements of the Due Process Clause.

27.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims asserted in this Complaint occurred in this District.

28.    In the alternative, this Court has jurisdiction over Defendant under at least Federal Rules of Civil Procedure 4(k)(2) based on Defendant's aggregate contacts with the United States as a whole, which to the extent known are discussed more completely below.

## FACTUAL ALLEGATIONS

### I.    Epoch's Intellectual Property

29.    Plaintiff is a Japanese toy company, founded in 1958. Plaintiff is well known for manufacturing the Calico Critters series toy, the Aquabeads series toy, and various board games.

30.     Plaintiff launched a line of collectible anthropomorphic animal figurines under the name Sylvanian Families in Japan in 1985.

31.     In 1993, Epoch began distributing the same line of toys under the mark Calico Critters in the United States. The Calico Critters toys feature animal figures, homes, furniture and accessories. The Calico Critters toys are now distributed in over 70 countries in the world.

32.     The animal figures are made of a special soft flocked material that gives them an endearing quality. The toys are highly detailed and designed with remarkable attention to detail. The Calico Critters figurines are sold as families, with mothers, fathers, sisters, brothers and babies. They are set in idyllic landscapes and created in a style unique to and immediately recognizable as the Calico Critters dolls. The Calico Critters families and friends live in life-like homes, which have incredible details.



**The Calico Critters Chocolate Rabbit Family.**



**Calico Critters' Dolls, Dollhouses, Furniture Pieces.**

33.     Each Calico Critter animal has its own name and birthday, and is dressed in outfits designed to match its personality. Children around the world play with the Calico Critters dolls. And parents and educators worldwide use the Calico Critters dolls to encourage imaginative play, and to develop storytelling and creative thinking, to teach them social skills, and fine motor skills, and just to enjoy their fun playtime together at home and school.

34.     Epoch has won a number of awards for the Calico Critters dolls over the years, including a series of the Oppenheim Toy Portfolio Awards, which are awarded to high-quality, engaging and developmentally appropriate toys in the United States. The Calico Critters toys have also won Learning Express Best Pre-K Toy of the Year, TDmonthly – Classic Award, Seal of Excellence by Creative Child Magazine, ASTRA's Best Toys for Kids!, the PAL Award, Mom's Choice Award, to name a few.

35.    Epoch advertises, markets and promotes sales of the Calico Critters toys on its website, third-party retailers' websites, catalogs, and online, including on YouTube and Instagram.

36.    For example, Epoch showcases the Calico Critters dolls in their online videos on their YouTube channel. In each video, Epoch uses the Calico Critters dolls to tell stories about everyday life with families, schools, friendship challenges, and many similar topics.



**Calico Critters' YouTube Episode. Exhibit 10.**

37.    Epoch's Calico Critters toys and Epoch's photographs of those toys are original woks of authorship and constitute copyrightable subject matter under the Copyright Act, 17 U.S.C. §§ 101, et seq.

38.    Plaintiff has registered the copyright in its Calico Critters dolls, accessories and furniture pieces with the United States Copyright Office.

39.    Epoch owns at least 26 Certificates of Registration covering its copyrights in the Calico Critters dolls, dollhouses and furniture, issued by the United States Copyright Office that

bear the numbers identified in Exhibit 11 (collectively, the "Calico Critters Registered Copyrighted Works"). These US copyright registrations are perfected, and where appropriate, have been renewed with the United States Copyright Office and all registrations are in full force.

40.    For instance, Epoch owns the US Copyright Registration No. VA0000228815, titled "Rabbit Family," registered on April 30, 1986, with the first publication date on March 28, 1985.

41.    Epoch also owns the US Copyright Registration No. VA0000246146, titled "Beaver Family," registered on November 22, 1986, with the first publication date on July 20, 1986.

42.    Epoch also the US Copyright Registration No. VA1-920-808, titled "Polar Bear Family," registered on July 29, 2014, with the first publication date on June 13, 2012.

43.    Epoch also owns the US Copyright Registration No. VA1-920-824, titled "Goat Family," registered on July 29, 2014, with the first publication date on June 13, 2013.

44.    Epoch is the owner of all of these US copyright registrations and rights.

45.    Epoch also holds registrations for the Calico Critters works in other jurisdictions, including Japan.

46.    Epoch owns valid and subsisting copyrights over Epoch's Photograph below, including registrations in Japan and United Kingdom ("Epoch's Photograph").



47.     Epoch has trademark rights over the Calico Critters dolls and characters, for its toys, dolls, accessories and furniture pieces and entertainment services (the "Calico Critters Trademarks").

48.     Epoch is the owner of the U.S. Trademark Reg. Nos. 6842534, 6842533, and 7072627.

49.     Attached is a true and accurate copy of U.S. Trademark Reg. No. 6842534 as Exhibit 29.

50.     Attached is a true and accurate copy of U.S. Trademark Reg. No. 6842533 as Exhibit 30.

51.     Attached is a true and accurate copy of U.S. Trademark Reg. No. 7072627 as Exhibit 31.

52.     Epoch owns common law rights over the Chocolate Rabbit trademark, which consists of a cream-colored rabbit with pink and brown color on its ears, black eyes, and a pink nose, as depicted below.

53.     Epoch owns common law rights over the Chocolate Rabbit Family trademark, which consists of a family of cream-colored rabbits with pink and brown color on its ears, black eyes, and a pink nose, as depicted below.

54.     Epoch owns common law rights over the Persian Cat trademark, which consists of a white cat with pink ears, a pink nose, and black eyes, as depicted below.

55.     Epoch owns common law rights over the Persian Cat Family trademark, which consists of a family of grey and white cats with pink ears, a pink nose, and black eyes, as depicted below.



Reg. No. 6842534



Reg. No. 6842533



Reg. No. 7072627



Chocolate Rabbit
(common law)



Chocolate Rabbit Family
(common law)



Persian Cat Family
(common law)

Persian Cat
(common law)

56.     Epoch uses the Calico Critters Trademarks on its website, its social media

accounts, and other promotional and marketing materials in connection with promoting sales of

its toys and its online video episodes.



**Epoch's Instagram Account.**



**Epoch's YouTube Account.**



**Calico Critters Online Video Episodes.**

57.     The Calico Critters Trademarks are distinctive and instantly recognizable.

58.     The Calico Critters Trademarks enjoy significant secondary meaning in the minds of the public as a source identifier of Epoch's Calico Critters toys and entertainment services since long before Defendant began distributing the Infringing Works and providing advertising and content creation services and services to promote goods and services of others.

19

59.    As the owner of the Calico Critters Trademarks, Epoch enjoys extensive goodwill associated therewith.

60.    Epoch regularly licenses Epoch's copyrighted works, including Calico Critters Registered Copyrighted Works and Calico Critters Trademarks (collectively "Epoch's Intellectual Property Rights") to collaborate and partner with other brands.

61.    For instance, Epoch has collaborated with Jill Stuart for cosmetic products.



**Jill Stuart's cosmetic products in collaboration with the Calico Critters dolls. Exhibit 12.**

62.    Epoch has collaborated and with Sanrio for toys.



**Sanrio's toys in collaboration with the Calico Critters dolls. Exhibit 13.**

63. Epoch has collaborated with Ladurée for sweets.



**Advertising for Ladurée's sweets in collaboration with the Calico Critters dolls.
Exhibit 14.**

64. Epoch has collaborated with Feiler for home products.



**Advertising for Feiler's home products in collaboration with the Calico Critters characters. Exhibit 15.**

65.    Epoch also works with online influencers to market and promote its products.



**Screenshots of Calico Critters' online Ambassadors' Posts on Instagram. Exhibit 16.**

## II.     Defendant's Infringing Use of Epoch's Intellectual Property

66.     Defendant engages in online advertising, marketing and video production services on social media platforms, including TikTok, Instagram, YouTube, X and Facebook, under the username Sylvanian Drama.

67.     Defendant creates, publishes and disseminates the Infringing Works, for the purposes of marketing and promoting goods and services for others. In the past several years, Defendant has posted a number of the Infringing Works on various social media platforms, including TikTok, Instagram, YouTube, and Facebook.

68.     Upon information and belief, Defendant adopted the username Sylvanian Drama, with knowledge that Epoch promotes the Calico Critters toys as Sylvanian Families in Japan, UK, Europe, and other countries.

| Epoch's UK Online Accounts | Defendant's Online Accounts |
|---|---|
| **Sylvanian Families Official** ● <br> @SylvanianFamiliesOfficial · 172K subscribers · 327 videos <br> Welcome to the official Sylvanian Families YouTube Channel where you ca <br> sylvanianfamilies.com and 1 more link <br> **Subscribe** | **Sylvanian Drama** <br> @sylvaniandrama · 9.7K subscribers · 194 video <br> sylvanian drama tiktoks | subscribe for a new up <br> **Subscribe** |
| sylvanianfamilies_uk ✔ <br> 3,650 posts   183K followers <br> Sylvanian Families Official UK <br> Ⓢ sylvanianfamilies_uk <br> Interest <br> 🎠 Welcome to the Sylvanian Village! <br> ❤️ Family, nature & love since 1985 <br> 🇬🇧 U.K. account <br> 🟢 Press enquiries:... more <br> ↪ linktr.ee/sylvanianfamiliesuk | **sylvaniandrama** Sylvaniandrama <br> **Follow**   **Message**   ↪   ··· <br> 749 Following   2.5M Followers   69.3K Like <br> Instagram: @sylvaniandrama |

69.     Upon information and belief, Defendant has provided her advertising and content creation services to third-party entities by publishing the Infringing Works on various social media platforms.

70.     Upon information and belief, Defendant created an online video in partnership with Marc Jacobs, using the Calico Critters dolls without Epoch's authorization. In the video, a Calico Critters doll is seen holding a bag with Marc Jacobs' branding.





**Exhibit 17.**

71.    Upon information and belief, Defendant earned revenue from the placement of Marc Jacobs products in her online video.

72.    Upon information and belief, Defendant created an online video in partnership with Kate Spade, using the Calico Critters dolls without Epoch's authorization.

73.    In the video, a Calico Critters doll is seen holding a bag with Kate Spade's branding.





**Exhibit 18.**

74.      Upon information and belief, Defendant earned revenue from the placement of Kate Sade's branding and products in her online video.

75.      Upon information and belief, Defendant created an online video in partnership with JRSK, Inc., using the Calico Critters dolls without Epoch's authorization.

76.      In the video, a Calico Critters doll is seen holding suitcases with JRSK, Inc.'s AWAY branding.





**Exhibit 19.**

77.    Upon information and belief, Defendant earned revenue from the placement of JRSK, Inc.'s AWAY products in her online video.

78.    Upon information and belief, Defendant created an online video in partnership with Burberry, using the Calico Critters dolls without Epoch's authorization.

79.    In the video, Calico Critters dolls seen holding products with Burberry's branding.






**sylvaniandrama**
Sylvaniandrama · 2022-4-14

**Follow**

@Burberry #Lolabag #burberry #ad #omgburberrycollab

♫ Ronda Alla Turca - Mozart

Paid partnership

**Exhibit 20.**

80.     Upon information and belief, Defendant earned revenue from the placement of Burberry products in her online video.

81.     Upon information and belief, Defendant created online videos in partnership with Netflix, using the Calico Critters dolls without Epoch's authorization.

82.    Upon information and belief, Defendant earned revenue for promoting Netflix's streaming services in her online videos.



**Exhibit 21.**

83.    Upon information and belief, Defendant created online videos in partnership with Hilton, using the Calico Critters dolls without Epoch's authorization.





**Exhibit 22.**

84.    Upon information and belief, Defendant earned revenue for promoting Hilton's hotel services in her online videos.

85.    Upon information and belief, Defendant created online videos in partnership with Supergoop, using the Calico Critters dolls without Epoch's authorization.



**Exhibit 23.**

86.     Upon information and belief, Defendant earned revenue for promoting

Supergoop's products in her online videos.

87.     Upon information and belief, Defendant created online videos in partnership with

Taco Bell, using the Calico Critters dolls without Epoch's authorization.





**Exhibit 24**.

88.    Upon information and belief, Defendant earned revenue for promoting Taco Bell's products and restaurant services in her online video.

89.    Upon information and belief, Defendant created online videos in partnership with Ruggable, using the Calico Critters dolls without Epoch's authorization.



**Exhibit 25.**

90.    Upon information and belief, Defendant earned revenue for promoting Ruggable's products in her online videos.

91.    Defendant uses the hashtags #ad and #partner and a designation "paid partnership" on the Infringing Works to indicate she is advertising the third-party entities' products and services for commercial gain.



**Exhibit 26.**

92.    In the past few years, Defendant has given a dozen of interviews to different media outlets about the Infringing Works on her social media pages.

93.    For instance, in an interview with the publication *Marketing Brew*, Defendant admitted that the Infringing Works are created as advertisements.

94.    Defendant said, "I totally understand from a brand's point of view that there are some topics that you can't discuss that aren't brand-friendly" as she creates the Infringing Works for third-party brands. Exhibit 27.

95.     According to Defendant, "the less that you mention the brand, the better because people are going to gravitate more towards that and actually be invested in the video." *Id.* Defendant consciously avoids mentioning the partner brand names, products or goods in the Infringing Works, but relies on the Calico Critters' charm and multi-generational appeal to attract and retain viewers' attention to the Infringing Works as advertisements.

96.     In another interview with Fohr, Defendant explained that her inspirations for the Infringing Works come from "cringey TV shows and early 2000s comedy" and "[her] cats," and her Infringing Works feature stories about "insecure people, diet culture, toxic men, and sustainability."

---

WOOD: What's your creative process? Where do you draw inspiration for your content?

VON ENGLEBRECHTEN: My biggest inspiration is cringey TV shows and early 2000s comedy. I love anything from that time in terms of the style of humor. I'm also really inspired by my cats because they are extremely sassy and self-obsessed and can be so cute, but they also have no morals when it comes to killing other animals. I try to embody that with the Sylvanians.

WOOD: Why do you think Sylvanian Drama is so popular and resonates with so many people?

VON ENGLEBRECHTEN: I don't know exactly, but maybe it's because it's coming from the voice of a 22-year-old who struggles with the same things as [they do]. I have a lot of storylines about insecure people, diet culture, toxic men, and sustainability, which I think other girls my age are also thinking about a lot. Maybe because my humor is childlike, people have a weird reaction to it and feel nostalgic when they see the account and the storylines. A lot of people say that it reminds them of how they played with toys, mixed with adult humor.

---

*See* **Exhibit 28.**

97.     Defendant has not stated in any of the interviews that she creates the Infringing Videos as parodies.

98.     The Infringing Works do not comment on or criticize Epoch or the Calico Critters toys.

99.     At all times relevant to this action, Defendant had access to and copied Calico Critters Registered Copyrighted Works.

100.    At all times relevant to this action, Defendant acted without authorization or license from Epoch.

101.    In the Infringing Works, Defendant made only minimal alterations on some of the dolls, such as dressing them in different costumes and adding fake eyelashes. Defendant's Infringing Works do not add anything fundamentally different or new purpose to the Calico Critters toys. Defendant uses the Calico Critters dolls in a way that consumers use dolls, *i.e.* to use in pretend play or tell imaginary stories. She did not transform the use of the Calico Critters toys in her Infringing Works. However, she creates and disseminates the Infringing Works in order to advertise products and services for herself and other brands for commercial purposes.

102.    Defendant could have used any other dolls or toys in order to create advertising videos. Defendant purposefully used the Calico Critters Registered Copyrighted Works with full knowledge that Epoch had copyrights over them.

103.    Defendant also could have sought permission to use Epoch's Intellectual Property rights. But she did not.

104.    Upon information and belief, Defendant has licensed to use her partner brands' trademarks and intellectual property rights in the Infringing Works. Defendant obtains licenses to intellectual property rights when such licenses benefit her. Here, Defendant did not to seek such permission from Epoch before making and disseminating the Infringing Works. Instead, Defendant disregarded Epoch's Intellectual Property Rights.

105.    Defendant's infringing conducts usurped licensing opportunities from Epoch.

Defendant partnered with third-party entities, including Kate Spade, Marc Jacobs, Burberry,

Netflix, Hilton, Taco Bell, Urban Outfitters, Supergoop, Asos, Sephora, Oatly, and many others,

to promote their goods and services, using the Calico Critters toys, without license or

authorization from Epoch. Epoch could have licensed the Calico Critters toys for such

commercial activities.

106.    Defendant also impermissibly associates the Infringing Works with Epoch's

Calico Critters toys, characters, image, and brand.

107.    In many of the Infringing Videos, Defendant uses the Calico Critters Trademarks

to promote her advertising and content creation services, and goods and services of others.

| Epoch's Calico Critters Trademarks | Defendant's Infringing Use of the Calico Critters Trademarks |
|---|---|
|  | |

108.    To further illustrate Defendant's disregard for Epoch's Intellectual Property

Rights, Defendant purposely adopted the username Sylvanian Drama to promote her advertising

services and the Infringing Works.

109.    Defendant is well aware that Calico Critters dolls are known as Sylvanian Families in the UK, Europe, Japan, and other countries.

110.    As a result of Defendant's use of the Calico Critters Registered Copyrighted Works in the Infringing Works, consumers, including potential purchasers of Calico Critters toys and viewers of Calico Critters videos in the State of New York, are likely to be misled and confused as to the nature, origin, and sponsorship of the Infringing Work, and are likely to form the false impression that Epoch has produced, authorized, approved, licensed, sponsored, or endorsed Defendant's Infringing Works or Defendant's use of Epoch's Trademarks.

111.    After learning of Defendant's unauthorized use of Epoch's Intellectual Property Rights in the Infringing Works, on or about October 23, 2023, Epoch sent a copyright violation notice to TikTok pursuant to 17 U.S.C. § 512(c) of the Digital Millennium Copyright Act (the "DMCA Takedown Notice").

112.    On or about December 11, 2023, TikTok requested further information to determine whether Defendant's videos were fair use.

113.    On or about February 21, 2024, Epoch, by its undersigned counsel, provided a detailed explanation as to why Defendant's Infringing Works did not constitute fair use.

114.    On or about April 9, 2024, after reviewing Epoch's explanation, TikTok removed and disabled Defendant's TikTok account.

115.    On or about April 25, 2024, Defendant filed a counternotice, claiming that the Infringing Works were "parody."

116.    Over the following 11 months, Epoch has tried to amicably resolve this matter without litigation. But Defendant continues to profit from the Infringing Works with the full knowledge that Defendant violates Epoch's Intellectual Property Rights. Therefore, Epoch has

no choice but to file this lawsuit to enforce its rights, and to enjoin Defendant from further violating Epoch's rights.

<u>**COUNT I**</u>
**Copyright Infringement Under 17 U.S.C. § 101 et seq.**

117.    Epoch repeats and realleges every allegation set forth above.

118.    Epoch owns valid and subsisting copyright registrations in the Calico Critters Registered Copyrighted Works in the United States as depicted in Exhibit 11.

119.    Epoch owns valid and subsisting copyrights over Epoch's Photograph below in Japan and the United Kingdom.



120.    Epoch has not authorized Defendant or its employees, personnel, principals, or affiliates to use, copy, display, distribute, manipulate, or create derivative works from Calico Critters Registered Copyrighted Works or Epoch's Photograph.

121.    Defendant has directly infringed Epoch's copyrights by reproducing, distributing, displaying, and creating derivative works from Calico Critters Registered Copyrighted Works and Epoch's Photograph, including but not limited to through Defendant's creation and dissemination of the Infringing Works.

122.   Defendant's creation and dissemination of the Infringing Works was not parody because it bore no message whatsoever about the Calico Critters toys or Epoch, nor did they seek or offer any commentary or criticism about any of them.

123.   Defendant admitted that her inspirations for the Infringing Works come from "cringey TV shows and early 2000s comedy" and "[her] cats," and her Infringing Works feature stories about "insecure people, diet culture, toxic men, and sustainability."

124.   Defendant has created and displayed the Infringing Works for other entities including Kate Spade, Marc Jacobs, Burberry, Netflix, Hilton, Taco Bell, Urban Outfitters, Supergoop, Asos, Sephora, Oatly, and many others for commercial purposes.

125.   Defendant creates and publishes the Infringing Works for commercial purposes. The Infringing Works are designated as "paid partnership" with hashtags #ad and #partner.

126.   Defendant has admitted in interviews that she works with third-party brands to create advertising videos to promote their products and services.

127.   Online viewers of the Infringing Works acknowledge the advertising nature of the videos.

128.   Defendant has earned money from creating, publishing, and disseminating the Infringing Works.

129.   Defendant saved significant expenses and costs in creating the Infringing Works because Defendant did not have to expend her resources or efforts to design, develop, create or manufacture the Calico Critters original dolls, accessories or other toys used in the Infringing Works.

130.    Defendant saved significant expenses and costs in creating the Infringing Works because Defendant did not pay licensing fees to Epoch to use the Calico Critters Registered Copyrighted Works in the Infringing Works.

131.    Defendant entered into licensing and/or partnership agreements with third-party entities in creating the Infringing Works. Thus, Defendant had means and knowledge to seek and/or obtain authorization and approval to use others' intellectual property rights in the Infringing Works.

132.    Defendant intentionally and willfully neglected to obtain authorization or approval from Epoch to use Epoch's Intellectual Property Rights in any of the Infringing Works.

133.    Defendant's Infringing Works usurped and continues to usurp licensing opportunities from Epoch.

134.    Defendant's infringement was willful and intentional.

135.    Epoch has suffered actual harm and reputational harm and incurred significant costs as a direct and proximate result of Defendant's infringement of Calico Critters Registered Copyrighted Works.

136.    Epoch is entitled to injunctive relief enjoining and restraining Defendant from infringing the copyrights in the Calico Critters Registered Copyrighted Works, including but not limited to continuing to reproduce, distribute, display, market, advertise, promote, produce, sell, or offer for sale the Infringing Works or any works that are derivative of or copied from the Calico Critters Registered Copyrighted Works.

137.    Epoch is entitled to recover statutory damages or actual damages sustained as a result of Defendant's infringement.

138.    Epoch is entitled to recover its reasonable attorneys' fees incurred in this action.

## COUNT II
### Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

139.    Epoch repeats and realleges every allegation set forth above.

140.    The Calico Critters Trademarks are valid, protectible, federally registered marks that Epoch owns.

141.    Epoch is the owner of the U.S. Trademark Reg. Nos. 6842534, 6842533, and 7072627 for its toys, dolls, accessories and furniture pieces.

142.    Defendant has knowingly and willfully used and continues to use in commerce, without Epoch's permission or authorization, the Calico Critters Trademarks, and/or confusingly similar marks, in connection with advertising and content creation services which Defendant offers, promotes, advertises, offers for sale, and/or sells in the United States, namely the Infringing Works, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

143.    Defendant has knowingly and willfully used and continues to use in commerce, without Epoch's permission or authorization, the Calico Critters Trademarks, and/or confusingly similar marks, in connection with promoting sales of goods and/or services offered and sold by others, in the United States, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

144.    Specifically, Defendant offers, promotes, markets and offers to provide advertising and content creation services by posting the Infringing Works on various social media platforms.

145.    Defendant further offers, promotes, markets goods and services offered and sold by others in the Infringing Works. Such goods and services include apparel goods, cosmetics, food and beverage products, entertainment services, hotel services, restaurant services, and many others.

146.    Toys, dolls, accessories and furniture pieces are closely related to Defendant's advertising and content creation services because consumers regularly see toys used in relation to advertising and content creation services.

147.    Toys, dolls, accessories and furniture pieces are closely related Defendant's services to promote sales of goods and services of others because consumers regularly see toys used in relation to promote goods and services of others in advertising.

148.    The Infringing Works have caused and are likely to cause confusion, deception, and mistake by creating the false and misleading impression that Epoch has authorized Defendant to use the Calico Critters Trademarks, that Defendant is associated or connected to Epoch, or that Epoch has endorsed, sponsored or approved Defendant's use of the Calico Critters Trademarks in the Infringing Works.

149.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Calico Critters Trademarks.

150.    Unless enjoined, Defendant will continue to cause a likelihood of confusion and deception on the public, and injury to Epoch's goodwill and reputation as embodied in the Calico Critters Trademarks, for which Epoch has no adequate remedy at law. Thus, Epoch is entitled to injunctive relief under 15 U.S.C. §§ 1114 and 1116.

151.    Epoch is entitled to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, and 1117.

## COUNT III
**Trademark Infringement, False Designation of Origin, False Endorsement, and Unfair Competition Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

152.    Epoch repeats and realleges every allegation set forth above.

153.    Epoch owns valid trademark rights over the Calico Critters Trademarks for its toys, dolls, accessories and furniture pieces and entertainment services.

154.    Epoch's Calico Critters Trademarks are distinctive and function as a source identifier.

155.    Based on extensive marketing, promotion and use, the Calico Critters Trademarks have acquired secondary meaning and are associated with Epoch and/or Calico Critters.

156.    Defendant willfully misappropriated the Calico Critters Trademarks, without Epoch's permission, in the Infringing Works.

157.    Defendant's actions described above constitute trademark infringement, false designation of origin, false endorsement, and unfair competition in violation of 15 U.S.C. § 1125(a).

158.    Specifically, Defendant uses the Calico Critters Trademarks, and any colorable imitation of the Calico Critters Trademarks in the Infringing Works, in order to promote Defendant's advertising and content creation services and apparel products.

159.    Defendant also uses the Calico Critters Trademarks, and any colorable imitation of the Calico Critters Trademarks in the Infringing Works in order to promote the goods and services sold and offered by others.

160.    To further illustrate Defendant's conscious disregard for Epoch's intellectual property rights, Defendant knowingly adopted the username Sylvanian Drama with full knowledge that Epoch's Calico Critters toys are known as Sylvanian Families in other countries.

161.    Defendant's infringing and unauthorized use of the Calico Critters Trademarks and any colorable imitation of the Calico Critters Trademarks in the Infringing Works is likely to cause confusion or mistake in the public mind as to the affiliation, connection or association of

Defendant with Epoch, or as to the origin, sponsorship, or approval of Defendant's goods, services or commercial activities.

162.    Defendant uses the designation of "paid partnership" in the Infringing Works, which prominently feature the Calico Critters Trademarks or any colorable imitation of the Calico Critters Trademarks.

163.    The designation of "paid partnership" in online videos, such as on TikTok and Instagram, indicate that a content creator has received compensation from a brand or a third-party in exchange for promoting the brand's or third-party's goods or services in online videos.

164.    When the designation of "paid partnership" appears on online videos, consumers believe a brand or a third party endorsed, sponsored and approved such the content creator's online videos.

165.    When consumers encounter the social media pages owned and controlled by Defendant, and/or the Infringing Works, they will likely believe Epoch has endorsed, sponsored or approved Defendant's social media pages or the Infringing Works because of the "paid partnership" designation.

166.    Defendant stated in an interview that "the less that you mention the brand, the better because people are going to gravitate more towards that and actually be invested in the video."

167.    Thus, in the Infringing Works, Defendant relies on the likeness and popularity of the Calico Critters dolls and characters to promote her advertising and content creation services and to promote goods and services offered and sold by third parties.

168.    Defendant's actions described above create the impression in the mind of the public that Epoch is responsible for the quality and performance of Defendant's

products/services, Epoch endorsed Defendant's advertising and content creation services and Defendant's services to promote goods and services of others, or Epoch is otherwise affiliated, connected, or associated with Defendant, its products, services, and its commercial activities.

169.    Therefore, Defendant's acts constitute trademark infringement, false designation of origin, false endorsement, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

170.    Unless enjoined, Defendant will continue to cause a likelihood of confusion and deception on the public, and injury to Epoch's goodwill and reputation as embodied in the Calico Critters Trademarks, for which Epoch has no adequate remedy at law. Thus, Epoch is entitled to injunctive relief under 15 U.S.C. §§ 1125 and 1116.

171.    Epoch is entitled to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125, and 1117.

<u>**COUNT VI**</u>
**Trademark Infringement Under New York Common Law**

172.    Epoch repeats and realleges every allegation set forth above.

173.    Defendant's actions described above create the impression in the mind of the public that Epoch is responsible for the quality and performance of Defendant's products/services or is otherwise affiliated, connected, or associated with Defendant, its products, services, and its commercial activities.

174.    Epoch owns valid trademark rights over the Calico Critters Trademarks for its toys, dolls, accessories and furniture pieces and entertainment services.

175.    Epoch's Calico Critters Trademarks are distinctive and function as a source identifier.

176.     Based on extensive marketing, promotion and use, the Calico Critters Trademarks have acquired secondary meaning and are associated with Epoch and/or Calico Critters.

177.     Defendant willfully misappropriated the Calico Critters Trademarks, without Epoch's permission, in the Infringing Works.

178.     Defendant's actions described above constitute trademark infringement, false designation of origin, false endorsement, and unfair competition in violation of New York common law.

179.     Specifically, Defendant uses the Calico Critters Trademarks, and any colorable imitation of the Calico Critters Trademarks in the Infringing Works, in order to promote Defendant's advertising and content creation services.

180.      Defendant also uses the Calico Critters Trademarks, and any colorable imitation of the Calico Critters Trademarks in the Infringing Works in order to promote the goods and services sold and offered by others.

181.     To further illustrate Defendant's conscious disregard for Epoch's intellectual property rights, Defendant knowingly adopted the username Sylvanian Drama with full knowledge that Epoch's Calico Critters toys are known as Sylvanian Families in other countries.

182.     Defendant's infringing and unauthorized use of the Calico Critters Trademarks and any colorable imitation of the Calico Critters Trademarks in the Infringing Works is likely to cause confusion or mistake in the public mind as to the affiliation, connection or association of Defendant with Epoch, or as to the origin, sponsorship, or approval of Defendant's goods, services or commercial activities.

183.    Defendant uses the designation of "paid partnership" in the Infringing Works, which prominently feature the Calico Critters Trademarks or any colorable imitation of the Calico Critters Trademarks.

184.    The designation of "paid partnership" in online videos, such as on TikTok and Instagram, indicate that a content creator has received compensation from a brand or a third-party in exchange for promoting the brand's or third-party's goods or services in online videos.

185.    When the designation of "paid partnership" appears on online videos, consumers believe a brand or a third party endorsed, sponsored and approved such the content creator's online videos.

186.    When consumers encounter the social media pages owned and controlled by Defendant, and/or the Infringing Works, they will likely believe Epoch has endorsed, sponsored or approved Defendant's social media pages or the Infringing Works because of the "paid partnership" designation.

187.    Defendant stated in an interview that "the less that you mention the brand, the better because people are going to gravitate more towards that and actually be invested in the video."

188.    Thus, in the Infringing Works, Defendant relies on the likeness and popularity of the Calico Critters dolls and characters to promote her advertising and content creation services and to promote goods and services offered and sold by third parties.

189.    Defendant's actions described above create the impression in the mind of the public that Epoch is responsible for the quality and performance of Defendant's products/services, Epoch endorsed Defendant's advertising and content creation services and

Defendant's services to promote goods and services of others, or Epoch is otherwise affiliated, connected, or associated with Defendant, its products, services, and its commercial activities.

190.    Therefore, Defendant's acts constitute common-law trademark infringement of Epoch's proprietary rights in the Trademarks and misappropriation in Epoch's goodwill, as provided for in N.Y. Gen. Bus. Law § 360-o.

191.    Unless enjoined, Defendant will continue to cause a likelihood of confusion and deception on the public, and injury to Epoch's goodwill and reputation as embodied in the Calico Critters Trademarks, for which Epoch has no adequate remedy at law. Thus, Epoch is entitled to injunctive relief under New York common law.

192.     Epoch is entitled to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under New York common law.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Epoch requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award them relief including, but not limited to, the following:

    A.    An Order declaring that Defendant has willfully infringed and is infringing copyrights in the Calico Critters Registered Copyrighted Works under 17 U.S.C. § 106;

    B.    An order declaring that Defendant has willfully committed and is committing acts of false designation of origin, false or misleading description of fact, false endorsement or false or misleading representation in violation of Epoch's rights under 15 U.S.C. § 1114 &1125 (a) and New York state law;

    C.    An order declaring that Defendant infringed Epoch's Calico Critters Trademarks in the Infringing Works;

D.  An order declaring that Defendant has willfully and deliberately competed unfairly with Epoch in violation of Epoch's rights under 15 U.S.C. § 1114 & 1125 (a) and New York state law;

E.  An order preliminarily and permanently enjoining Defendant, her agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendant from:

1.  infringing the copyrights in the Calico Critters Registered Copyrighted Works, including but not limited to continuing to reproduce, distribute, display, market, advertise, promote, produce, sell, or offer for sale the Infringing Works or any works that are derivative of or copies from the Calico Critters Registered Copyrighted Works;

2.  manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any simulation, reproduction, counterfeit, copy, or colorable imitation of the Calico Critters Trademarks or any mark confusingly similar thereto;

3.  using any false designation of origin or false description or statement which can or is likely to lead the public or individuals, erroneously to believe that the Infringing Works have been provided, produced, distributed, offered for distribution, circulation, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for Epoch, when such is not true in fact;

4.  engaging in any other activity constituting an infringement of the Epoch
    Intellectual Property, or of Epoch's rights in, or right to use or to exploit
    the Epoch Intellectual Property; and

5.  assisting, aiding, or abetting any other person or business entity in
    engaging in or performing any of the activities referred to in
    subparagraphs (1) through (4) above.

F.  An award to Epoch, at its election prior to entry of final judgment, of statutory
    damages of up to $150,000 for each separate Calico Critters Copyrighted Work
    infringed, for willful infringement pursuant to 17 U.S.C. § 504(c), or Epoch's
    actual damages sustained as a result of Defendant's acts of copyright infringement
    according to proof and Defendant's profits obtained as a result of their acts of
    copyright infringement according to proof;

G.  An Order requiring Defendant to account and pay over to Epoch all gains, profits,
    and advantages derived by them as a result of its infringement of the Calico
    Critters Trademarks to the full extent provided for by Section 35 of the Lanham
    Act, 15 U.S.C. § 1117;

H.  An award to Epoch of such damages as it has sustained by reason of Defendant's
    infringement of the Calico Critters Trademarks; and that, because of the willful
    nature of said infringement, the Court enter judgment for Epoch for three times of
    the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C.
    § 1117;

    I.   An award to Epoch of its costs and expenses incurred in the investigation and prosecution of this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and Section 35 of the Lanham Act, 15 U.S.C. § 1117; and

    J.   Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Epoch hereby demands a trial by jury on all issues and claims so triable.

Date: April 7, 2025

*/s/ Aya Cieslak-Tochigi*

John L. Strand (*Pro Hac Vice contemporaneously submitted)*
jstrand@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
617.646.8000 Phone
617.646.8646 Fax

Aya Cieslak-Tochigi
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue
New York, NY 10158
acieslaktochigi@wolfgreenfield.com
212.697.7890 Phone
617.646.8646 Fax

*Counsel for Plaintiff*